**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **KENDRICK J. BRYANT,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO.** |
| | : | |
| **GREATER NEW HAVEN TRANSIT** | : | **3:12-CV-00071-VLB** |
| **DISTRICT, ET AL.,** | : | |
| **Defendants.** | : | **JULY 2, 2014** |
| | : | |

## MEMORANDUM OF DECISION GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT ON PLAINTIFF'S TITLE VII CLAIMS

Based on the procedural history and evidentiary deficiencies in this case, whereby the plaintiff, while establishing a contentious relationship with his employer, including two occasions on which it was concluded that defendant imposed excessive discipline, summary judgment is being entered for the defendant because plaintiff has failed to show, and to demonstrate his ability to show, the existence of any material fact from which a jury could reasonably conclude that his employer's actions were motivated by racial discrimination.

This matter was scheduled for a pre-trial conference before the court on June 17, 2014 for the purpose of informing the parties of the trial procedure followed by the Court, to address evidentiary matters, to determine how long a trial would take and for the court to determine whether there were any genuine issues of material fact for a jury to decide in a trial scheduled to begin Tuesday July 8, 2014.  After the plaintiff failed to appear for the hearing, the telephone number filed with the court was not answered four (4) times and a message was

left with a second number supplied to the clerk by defense counsel, the proceeding was adjourned and this decision issued.

I. PROCEDURAL HISTORY

The procedural history of this case is important to a full understanding of the genesis of this decision. Plaintiff filed his complaint on January 11, 2012, in which be brought claims against defendant under the Age Discrimination in Employment Act (the "ADEA"), the Americans with Disabilities Act (the "ADA"), the Rehabilitation Act (the "Rehab Act"), and Title VII of the Civil Rights Act of 1964 ("Title VII"). On April 1, 2013, defendant filed a motion for partial summary judgment, in which defendant sought summary judgment on plaintiff's ADEA, ADA, and Rehab Act claims.[1] Defendant did not move for summary judgment on plaintiff's Title VII claims. On December 6, 2013, this court, acting *sua sponte*, ordered the defendant to show cause why, in view of the arguments raised in its motion for partial summary judgment, it did not move for summary judgment on plaintiff's Title VII claims. Defendant then filed a memorandum of law in which it argued that summary judgment should be entered on plaintiff's Title VII claims. The court granted defendant's first motion for partial summary judgment on March 25, 2014 (the "March 25 Order"). On April 16, 2014 the court ordered plaintiff to show cause on or before May 15, 2014 why summary judgment should not be entered on his Title VII claim. The April 16 order to show cause included

---

[1] There were originally four defendants in the case: Greater New Haven Transit District ("GNHTD"), Al Naudus ("Naudus"), Donna Carter ("Carter"), and Connecticare, Inc ("Connecticare"). The claims against Naudus, Carter, and Connecticare have all been dismissed, leaving GNHTD as the sole defendant. The court thus uses "defendant" in the singular, despite the fact that there were multiple defendants at the time of many of the events described here.

detailed instructions for plaintiff on the necessary content of his response, and the consequences for failing to adequately respond.  In response, plaintiff filed a Local Rule 56(a)(2) statement [Dkt. 77], a memorandum in opposition to summary judgment [Dkt. 79], and an affidavit in support of the opposition to summary judgment [Dkt. 80].  Defendant then filed a brief in further support of the grant of summary judgment on plaintiff's Title VII claim. [Dkt. 81.]

The parties first filed their trial memoranda in early December 2013. Although instructed by the court to file a joint trial memorandum, [Dkt. nos. 16, 20], the parties filed separate trial memoranda.

On April 25, 2014, with leave of the court, each party filed an amended trial memorandum. [Dkt. Nos. 63 & 65.]  Plaintiff also filed a motion that day titled "Plaintiff's Motion to Strike Any Reference to Denise O'Hara", [Dkt. 64], which the court will construe as a motion *in limine*.

## II. PLAINTIFF'S PROPOSED TRIAL WITNESSES

Plaintiff's original witness list filed December 2, 2013, includes 16 individuals.  [Dkt. 34, Attachment 1.]  Plaintiff does not provide the titles or addresses for most of the witnesses, although four of the witnesses are titled "employee."  Plaintiff provides only an overview, stating: "Please note that the following list is composed of former and current employees, riders, and staff members of the Greater New Haven Transit District."  [Dkt. 34, Attachment 1.] Nor does plaintiff provide an adequate summary of the testimony that each witness is expected to offer, offering only a two or three word description for each witness. Eight of the 16 witnesses are described as "character witness."  Four of the 16

witnesses are described as "Andrew Brooks."  The four remaining witnesses are described as "service Andrew brooks [sic],"  "Andrew brooks [sic] Salary," "diversity witness," and "Salary witness."

On June 3, 2014, plaintiff filed what appears to be an amended witness list. That list includes 11 individuals, only three of whom were on plaintiff's first witness list.  Eight of the 11 individuals on plaintiff's amended witness list were not on his first witness list.  Plaintiff does not include titles or addresses for any of the witnesses.  Instead, plaintiff's handwritten notes on the document indicate that the first seven witnesses on the list will testify to "disparate treatment" and "grievances and disciplinary actions."  [Dkt. 85 at 1.] Plaintiff's notes further indicate that the last four witnesses on the list will be "expert witnesses" that will testify to the "nature of case," "retaliation," and "grievances and disciplinary actions."  [Dkt. 85 at 1.]

## III. PLAINTIFF'S PROPOSED TRIAL EXHIBITS

Plaintiff provided an exhibit list with eight proposed exhibits: [Exhibit 1] "Original Complaint Pages 1 Thru 9"; [Exhibit 2] "State of Connecticut COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES: FINAL SUMMARY OF REASONABLE CAUSE. Pages 1 Thru 9."; [Exhibit 3] "State of Connecticut EMPLOYMENT SECURITY APPEALS DIVISION, DECISION OF APPEALS REFEREE Pages 1 Thru 3"; [Exhibit 4] CHRO Case No. 1030323 AMENDED COMPLAINT Pages 1 Thru 3"; [Exhibit 5] "American Arbitration Association Case No. 12 300 13210 Award Letter Dated July 2, 2010. Pages 1 Thru 11."; [Exhibit 6] "Employee Personnel File (Various Pages: Grievance Denial Letters,

4

Employee Drug Testing Sheet, Employee Disciplinary Action Forms, Miscellaneous) 40 Page"; [Exhibit 7] "Audio Cassette Recording Of Unemployment Appeals Hearing On March 22, 2010. (60 Minutes)"; [Exhibit 8] "A-C Audio Cassette Recording Of Commission On Human Rights & Opportunities Probable Cause Hearing On July 19,2011 ( 1 (One) 60 Minute Tape & 2 (Two) 90 Minute Tapes)".  In his amended trial memorandum filing, plaintiff adds one more exhibit: [Exhibit 9] "Decision of appeals referee case 468-CC-10 979-BR-10 Pages 1-4 Letter Dated GNHTD July 28, 2009."

Although plaintiff filed one copy of his exhibits with the clerk's office, including the audio cassettes referenced as exhibits 7 and 8, to the court's knowledge, plaintiff has not provided chambers copies of his exhibits.[2]

## IV.LEGAL STANDARD

The Second Circuit has explicitly stated that "[d]istrict courts have the discretion to grant summary judgment *sua sponte*, even without notice in certain circumstances."  *Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading, Inc.*, 697 F.3d 59, 64 (2d Cir. 2012) (quoting *Schwan-Stabilo Cosmetics GmbH & Co. v. PacificLink Int'l Corp.*, 401 F.3d 28, 33 (2d Cir. 2005)).  "In granting summary judgment *sua sponte* . . . a district court must determine that the party against whom summary judgment is rendered has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried."  *Garanti*, 697 F.3d at 64.  The Seventh Circuit has previously affirmed a trial court's

---

[2] Although the tapes themselves would likely be inadmissible at trial under the rule against hearsay, an issue the court does not reach in this opinion, in the interest of thoroughness the court has reviewed the tapes and finds on them no further support for plaintiff's claim of discrimination.

sua sponte grant of summary judgment, which judgment was entered after the parties had submitted their trial briefs. In *Osler Institute, Inc. v. Forde*, 333 F.3d 832 (7th Cir. 2003), the Seventh Circuit found that the district court's decision to grant summary judgment sua sponte following submission of the trial briefs was not erroneous, and affirmed the sua sponte grant of summary judgment. In *Osler Institute*, the district court judge stated at the pretrial conference that he was concerned about the issues raised in the pretrial briefs, then vacated the trial date, and told the parties to prepare for oral argument on the issues in the trial briefs. 333 F.3d at 835. After oral argument, the district court judge dismissed all of the plaintiffs' claims. 333 F.3d at 835. The Seventh Circuit found that statements made by the judge at the pretrial conference put the plaintiff on notice that their case could be dismissed, and it was not erroneous for the trial judge to enter summary judgment. 333 F.3d at 836. Similarly, the court considers this plaintiff to be on notice that his case could be dismissed, in light of the court's April 16 order to show cause.

Having previously granted summary judgment in favor of defendant on plaintiff's ADA, ADEA, and Rehab Act claims, all that remains are plaintiff's Title VII claims.  Plaintiff marked the boxes for "race," "color," "age," and "disability" on his form complaint where it asks plaintiff to identify the types of discrimination defendant's conduct was based upon.  [Compl. at 3.]  As plaintiff's claim for age discrimination was covered by his ADEA claim, and his claim for disability discrimination was covered by his ADA and Rehab Act claims, the court

construes plaintiff's Title VII claims as applying to his claims of race and color discrimination.

Reading the complaint in the way most favorable to the pro se plaintiff for the purposes of this opinion, the court can identify the following five possible Title VII claims: (1) a disparate treatment claim rising out of his January 2010 termination and/or his February 2011 suspension; (2) a retaliation claim arising from alleged retaliation that occurred after plaintiff returned to work in July 2010, continuing through his resignation in April 2011; (3) a hostile work environment claim; (4) a constructive discharge claim related to plaintiff's April 2011 resignation; and (5) a disparate impact claim raised for the first time in his response to the April 16 order to show cause.

(A) Disparate Treatment

(1) Prima Facie Case

Plaintiff's Title VII claims for disparate treatment are analyzed under the burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491-92 (2d Cir. 2010). "Under this framework, a plaintiff must first establish a *prima facie* case of discrimination." *Id.* at 491 (citation omitted). "In the context of an alleged discriminatory discharge, a plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination." *Id.* at 491-92 (citation omitted). "Once a plaintiff meets this initial burden, the burden then

7

shifts to the defendant to offer a legitimate non-discriminatory reason for the termination." *Id.* at 492 (citation omitted).  If the defendant offers a legitimate non-discriminatory reason for the termination, "the burden returns to the plaintiff to show that the real reason for plaintiff's termination was his race and national origin." *Id.* at 492 (citation omitted).  Unlike an ADEA claim, which requires a plaintiff to show that they would not have been fired "but for" defendant's discrimination, a plaintiff bringing a Title VII claim need only show that discrimination was a "'motivating' or a 'substantial' factor in the employer's action." *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 171 (2009).

As with plaintiff's ADEA claims, the defendant does not contest that plaintiff satisfies the first three elements of a Title VII claim for disparate treatment: (1) as an African-American, plaintiff is a member of a protected class; (2) defendant does not dispute that plaintiff was qualified for his position;[3] and (3) plaintiff experienced adverse employment actions in both January 2010 and February 2011.

Plaintiff may establish the fourth element, circumstances giving rise to the inference of discrimination, indirectly, through evidence of "disparate treatment of fellow employees who engaged in similar conduct." *De Cintio v. Westchester Cnty. Med. Ctr.*, 821 F.2d 111, 115 (2d Cir. 1987) (citation omitted).  Plaintiff argues that a Caucasian employee, Andrew Brooks ("Brooks"), was similarly situated, but was treated differently for similar conduct.  However, as this court found in its

---

[3] The court finds that at the time he let his Medical Card expire in January 2011, plaintiff was no longer qualified for his position.

opinion granting summary judgment on plaintiff's ADEA claims, plaintiff has failed to show that Brooks is similarly situated to plaintiff.

In his response to the April 16 order to show cause, plaintiff attempts to bolster his previously unsupported claim of disparate treatment.  Plaintiff argues "[t]he only Caucasion [sic] comparator [sic] that [defendant] offered managed to avoid arbitration six times between Nov, 12 2004 to december [sic] 31 2007 including four times in one calender [sic] year."  [Pl. Mem. In Response to OTSC at 6.]  It's not clear to whom plaintiff is referring when he writes "Caucasion comparator [sic] that [defendant] offered", but assuming that he is referring to Andrew Brooks, plaintiff has provided no facts to support this assertion.  Even if he had facts to support this, it would be unpersuasive, because as discussed in more detail below, plaintiff has not shown that he and Brooks were similarly situated.

Plaintiff also asserts that he and Andrew Brooks "were similarly situated employees meaning we held the same possition [sic] by description [sic] made comparible [sic] wages, had the same supervisors and both where [sic] members of the same union.  And suject [sic] to the same Disciplinary process."  [Pl. Mem. In Response to OTSC at 6.]  These assertions are not supported by any citation to any facts in the record.  Assuming Bryant did cite to admissible evidence in the record to support these assertions, they would be insufficient to defeat summary judgment.  Even assuming that plaintiff and Mr. Brooks had the same position, made the same wages, had the same supervisors, were both members of the same union, and were both subject to the same disciplinary process, plaintiff has

9

not responded to or countered in any way the court's finding in its earlier opinion,

in which the court found that Bryant failed to show that he and Brooks were

similarly situated, finding instead that:

> Two years is a significant amount of time, and enough time for a party to evolve in their approach to discipline. It is entirely possible that Defendants decided to be less tolerant of such behavior after terminating Brooks. Defendants assert that Plaintiff manifested a "lack of understanding" during the disciplinary process, which went into their decision to terminate him. Plaintiff does not show that Brooks manifested the same behavior during the disciplinary process. Further, although the complaints about Brooks were all apparently hearsay, Plaintiff's conduct toward a passenger was witnessed directly by the District's then Deputy Director. The Deputy Director then promptly wrote a two page incident report. As Defendants assert, "[u]nlike complaints that passengers had made about Mr. Brooks, this incident was impossible to deny." [Dkt. 26, Def. Br. at 12.] This fact is material, as both Brooks and Bryant were terminated after a GNHTD official witnessed their mistreatment of a customer in violation of GNHTD's policy prohibiting such behavior.

[Mar. 25 Order at 21-22.]

As plaintiff has still not shown that Mr. Brooks is similarly situated, and has not

offered any other similarly situated individuals for the court to consider, the court

finds that plaintiff has failed to make out a prima facie claim for disparate

treatment.

In his response to the April 16 order to show cause, plaintiff also argues

that the January 20, 2010 confrontation between himself and a passenger was

"intentional discrimination because it is likely intentionally planned to place J.

Cahoon and her aide, known to transit and its drivers as a troublemaker.  [sic]

And can be substantiated through witness testimony."  [Dkt. 79, Pl. Mem. In

Response to OTSC at 8.]  Plaintiff does not offer any evidence in support of this

claim and by failing to do so does not present a triable issue of fact. Plaintiff

further asserts: "Plaintiff believes that on 4-5 times a week, G.N.H.T.D. management targeted plaintiff and other African Americans for harassment [sic] by manually editing drivers [sic] to add to African [sic] American employees [sic] work loads and lighten them for caucasion [sic] counterparts.  After there [sic] computer system has already generated the drivers manifest.  This procedure was witnessed by plaintiff and other drivers on numerous occasions." [Dkt. 79, Pl. Mem. In Response to OTSC at 9.][4]

The record does suggest that the health aide with whom plaintiff had an altercation was "known as an aggressive advocate for her clients and not shy when it comes to lodging complaints." [Compl., Ex. 2 at 8.]  However, plaintiff cites to no evidence whatsoever in support of his assertion that defendant "likely intentionally placed" that health aide on plaintiff's route.  It is undisputed that the schedules for GNHTD's drivers are set by a software program, and that the program is "blind" to the identities of drivers and passengers when assigning routes to the drivers.  [Dkt. 26, Def. 56(a)(1) Statement, ¶ 31.]  Although it appears from the record that it is possible to make changes to drivers' schedules after they have been generated by the software program that sets the drivers' schedules, *see* Dkt. 26, Def. 56(a)(1) Statement, Ex. B. Aff. of Al Naudus at ¶ 9, there is absolutely no evidence that plaintiff's or any other drivers' schedules were in fact modified, much less with discriminatory intent or discriminatory

---

[4] Although plaintiff's brief is somewhat unclear, he appears to be attempting to assert a claim for disparate impact discrimination based on these same factual allegations.  As discussed below in Part E, the court finds that these are more appropriately considered to be allegations of intentional discrimination, and thus discusses them here.

impact.  Even if the court were to accept, hypothetically, plaintiff's assertion that a confrontational health aide was intentionally added to plaintiff's schedule, plaintiff provides no evidence whatsoever that such scheduling was done with discriminatory intent.  The court thus finds plaintiff's allegation unpersuasive.

Plaintiff was given ample opportunity to offer evidence in support of his claims and expressly informed of the imperative to do so repeatedly.  Plaintiff was specifically notified in the court's April 16, 2014 order to show cause that he must "file one or more affidavits disputing the Defendant's version of the facts" and that "[i]f Plaintiff fails to comply and submit evidence contradicting the defendant's version of the facts, Plaintiff's claims may be dismissed." [Apr. 16 Order at 2.]  Further, when defendant filed its original motion for partial summary judgment on April 1, 2013, defendant provided plaintiff with a document titled "Notice to Pro Se Litigant Opposing Motion for Summary Judgment As Required by Local Rule of Civil Procedure 56(b)", in which defendant notified plaintiff: "If you fail to comply and submit evidence contradicting the defendants' version of the facts, your claims may be dismissed if the defendants' motion shows that the defendants are entitled to judgment as a matter of law."  [Dkt. 26, Notice to Pro Se Litigant at 2.]  Plaintiff is on notice that he must provide evidence to contradict the evidence put forth by defendant.  Simply asserting that he will provide witness testimony at trial to support his claims is insufficient to defeat summary judgment where plaintiff has provided no details whatsoever as to who will be offering testimony, and what the content of that testimony will be.

(2) February 2011 Suspension

12

Defendant argues that plaintiff cannot bring a claim for disparate treatment arising from his February 2011 suspension because he did not properly exhaust that claim before bringing it in this court.  [Dkt. 49 at 9.]  However, the court need not even consider defendant's exhaustion argument, as plaintiff has offered no evidence whatsoever to establish circumstances giving rise to the inference of discrimination.  Plaintiff does not argue that he was similarly situated to Andrew Brooks with respect to the February 2011 suspension, nor does plaintiff identify any other individual to which he was similarly situated with respect to that adverse employment action.  Nor does plaintiff offer any other evidence of discrimination that would allow him to establish a prima facie case for a discrimination claim arising from the February 2011 suspension.  Plaintiff states only that "Plaintiff feels that if he were caucasion [sic] he would not of [sic] been disciplined at all."  [Dkt. 77, Pl. Local Rule 56(a)(2) Statement at ¶ 19.]  This assertion is unsupported by citation to any fact in the record, and is insufficient to establish a prima facie case of discrimination.  The court thus grants summary judgment in favor of defendant on plaintiff's disparate treatment claim arising from his February 2011 suspension.

Plaintiff argues that "in the past transit has warned [unidentified] caucasion [sic] drivers verbally of inpending [sic] physicals prior to card expiration [by unspecified individuals].  Treatment that was not afforded to plaintiff."  [Dkt. 79, Pl. Mem. In Response to OTSC at 15.]  This argument does not show that the February 2011 suspension was the product of discrimination.  First, plaintiff cites to no factual support whatsoever for this assertion.  Second, the

record indicates that the requirement that drivers such as plaintiff have a valid medical card was published to plaintiff in the defendant's employee handbook, a copy of which plaintiff acknowledges receiving, *see* Dkt. 31, Pl. Opp. Br. at 6. Third, plaintiff himself was clearly aware of his need to renew his medical card as early as November 2010, as he scheduled appointments for November and December 2010 in an attempt to renew his card, but was unable to renew it at those appointments, by no apparent fault of the defendant, *see* Compl., Ex. 1 at 7. The court thus finds this new allegation unpersuasive.  The record reflects that he failed to obtain a medical card because he missed his doctor's appointments for a check-up prerequisite to the issuance of a card, not because he did not know that he needed to renew his card.

Plaintiff also argues for the first time, apparently in support of his claim for discrimination arising from the February 2011 suspension, that "plaintiff believes he applied for FML, was granted FML. And or was eligible for FML. During the time period in question."  [Dkt. 79, Pl. Mem. In Response to OTSC at 15.] Assuming that plaintiff is referring to time off under the Family and Medical Leave Act (the "FMLA"), plaintiff has not shown that he was eligible to take time off under the FMLA at that time.  Further, it seems unlikely that plaintiff would be eligible for FMLA leave at that time, given that he was suspended not for being ill, but because he failed to have the documentation required by his employer for him to work. Finally, he does not affirmatively state nor does he produce any evidence in support of his suspicion that he applied for and received FMLA leave.

## (3) December 2008 Suspension

In his Local Rule 56(a)(2) Statement, plaintiff appears to raise a new claim of disparate treatment, arguing that he received a 30-day suspension in 2008 for leaving work early due to illness and failing to answer the company radio.  [Dkt. 77, Pl. Local Rule 56(a)(2) Statement at ¶ 4.]  Plaintiff states: "To the plaintiffs [sic] knowledge no caucasion [sic] drivers were ever suspended for 30 days for not being able to hear the company radio or having diarrhea."  [Dkt. 77, Pl. Local Rule 56(a)(2) Statement at ¶ 4.]  If this is in fact a new Title VII claim, it is untimely at this point, and the court will not consider it.  Even if the court were to consider the claim, plaintiff offers absolutely no factual evidence of discrimination, and offers only a wholly conclusory statement in support of this allegation. Moreover, a complaint cannot be amended in a memorandum of law or other filing.  *See, e.g., MacGillivray v. Whidden*, No. 3:04-cv-1523, 2006 U.S. Dist. LEXIS 9430, at *8 (D. Conn. Mar. 10, 2006) ("[Plaintiff] cannot amend his complaint in his memorandum.") (citations omitted).  Leave of the court is required at this stage of the proceeding.  As plaintiff does not fall within Federal Rule of Civil Procedure 15(a)(1), which allows plaintiff to amend his complaint without leave of the court in certain situations not present here, pursuant to Rule 15(a)(2) plaintiff may amend his complaint "only with the opposing party's written consent or the court's leave."  Leave to amend would likely be denied as it is highly prejudicial to the defense and would delay the trial. "Although Fed. R. Civ. P. 15(a) provides that leave to amend a complaint 'shall be freely given when justice so requires, Fed. R. Civ. P. 15(a), it is within the sound discretion of the district court whether to grant or deny leave to amend." *Zahra v. Town of Southold*, 48 F.3d 674, 685-86

(2d Cir. 1995) (finding reasonable the district court's decision to deny plaintiff's request to amend the complaint two and a half years after the action was commenced and three months prior to the trial) (citation omitted).  "Undue delay and futility of the amendment, among other factors, are reasons to deny leave." *Zahra*, 48 F.3d at 685 (quotation omitted).

## (B) Retaliation

As discussed in the March 25 Order in regards to plaintiff's ADEA claims, viewing the plaintiff's complaint in the light most favorable to him, the court considers plaintiff to have raised a claim of retaliation in violation of Title VII, arising from disciplinary actions taken against him following his return to work in July 2010, and a retaliation claim related to his February 2011 suspension for failure to have a valid medical card.

Title VII retaliation claims proceed under a three-step burden-shifting analysis.  First, plaintiff must establish a prima facie case of retaliation by showing: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (quotation and citation omitted). If the plaintiff meets his initial burden, "a presumption of retaliation arises," and the burden then shifts to defendant to "articulate a legitimate, non-retaliatory reason for the adverse employment action."  *Hicks*, 593 F.3d at 164 (quotations and citation omitted).  If the defendant satisfies this burden, the burden then shifts back to plaintiff to show "a retaliatory motive played a part in the adverse

employment actions even if it was not the sole cause[;] if the employer was motivated by retaliatory animus, Title VII is violated even if there were objectively valid grounds for the [adverse employment action]." *Hicks*, 593 F.3d at 164-65 (quoting *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990)) (modifications in original).

In regards to plaintiff's prima facie case, the only element in dispute is the question as to whether plaintiff has shown a causal connection between the protected activity and the adverse employment action.  "Proof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Hicks*, 593 F.3d at 170 (quoting *Gordon v. N.Y. City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)).

Retaliation claims under Title VII are analyzed by the same standards as retaliation claims brought under the ADEA.  *See, e.g.*, *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 205-06 (2d Cir. 2006).  Because the claims are analyzed under the same standards, the court relies on the analysis regarding plaintiff's ADEA retaliation claim done in the March 25 Order.  [Mar. 25 Order at 23-30.]  Plaintiff's briefing in response to the court's April 16 order to show cause contains no new allegations in support of a claim for retaliation under Title VII, and thus the court grants summary judgment in favor of defendant

on plaintiff's Title VII retaliation claims, for the same reasons the court granted summary judgment in favor of defendant on plaintiff's ADEA retaliation claims.

## (C) Hostile Work Environment

Reading the pro se plaintiff's complaint in the light most favorable to him, the court, in its March 25 Order, considered plaintiff to have raised hostile work environment claims under the ADEA.  [Mar. 25 Order at 30-33.]  Again reading the complaint in the light most favorable to the pro se plaintiff, the court considers plaintiff to have raised hostile work environment claims under Title VII, on the same facts.  The analysis of hostile work environment discrimination claims under Title VII is the same as hostile work environment claims raised under the ADEA.  *See Brennan v. Metro. Opera Ass'n*, 192 F.3d 310, 318 (2d Cir. 1999) (citation omitted).  The court found in its March 25 Order that plaintiff had not introduced facts sufficient to show that his workplace was "permeated with discriminatory intimidation" and thus he could not sustain an ADEA hostile work environment claim.  [Mar. 25 Order at 30-33.]  Because the analysis is the same, and because plaintiff has not introduced any new evidence to support this claim since the court's March 25 Order granting summary judgment in favor of defendant on plaintiff's ADEA hostile work environment claim, the court enters summary judgment in favor of defendant on plaintiff's Title VII hostile work environment claim.

## (D) Constructive Discharge

Reading the plaintiff's complaint in the light most favorable to the pro se plaintiff, the court considers plaintiff to have brought a constructive discharge

claim under Title VII arising from his April 4, 2011 resignation from employment with the defendant.  In its March 25 Order, the court dismissed plaintiff's ADEA constructive discharge claim arising from the same resignation, finding that plaintiff failed to make out a prima facie case of constructive discharge because he failed to produce objective evidence that a reasonable person in his shoes would have resigned, and did not produce any evidence that defendant intentionally made plaintiff's working conditions intolerable.  [Mar. 25 Order at 33-35.]  The standards for considering a constructive discharge claim are the same for claims raised under the ADEA and those raised under Title VII.  *See, e.g., Cecil v. United States Postal Serv.*, No. 03 Civ. 8404, 2004 U.S. Dist. LEXIS 16766, at *3-4 (S.D.N.Y. Aug. 24, 2004) ("In order to state a claim for constructive discharge under Title VII or the ADEA, the plaintiff must demonstrate, . . .").  Because the analysis is the same, and because plaintiff has not introduced any new evidence to support this claim since the court's March 25 Order granting summary judgment in favor of defendant on plaintiff's ADEA constructive discharge claim, the court enters summary judgment in favor of defendant on plaintiff's Title VII constructive discharge claim.

## (E) Disparate Impact

In his memorandum in response to the court's April 16 order to show cause, plaintiff appears to be asserting, for the first time, a Title VII disparate impact claim.  Under the heading "Standard," plaintiff purports to put forth the standard for establishing a prima facie case for a claim of disparate impact discrimination under Title VII.  Further, under the heading "Prima Facie Case of

Discrimination", plaintiff writes "A reasonable jury could believe and render a verdict that plaintiff was a wictim [sic] of workplace discrimination by G.N.H.T.D. on the theory of disparate impact as well as disperate [sic] treatment." [Dkt. 79, Pl. Mem. In Response to OTSC at 17.]  Under the heading "G.N.H.T.D. Is Not Intitled [sic] to Summary Judgment As Matter [sic] of Law" plaintiff writes: "Some facially neutral employment practices may violate the antidiscrimination laws. even [sic] in the absence of a demonstated [sic] discrimanatory [sic] intent.  the [sic] nescessary [sic] premise of the disparate impact theory is that some employment practices, adopted without a deliberate discrimanatory [sic] motive, may in operation be functionally equivalent to intentional discrimination." [Dkt. 79, Pl. Mem. In Response to OTSC at 18-19.]

Apparently in support of this allegation of disparate impact, plaintiff argues that the January 20, 2010 confrontation between himself and a passenger was "intentional discrimination because it is likely intentionally planned to place J. Cahoon and her aide, known to transit and its drivers as a troublemaker.  [sic] And can be substantiated through [undisclosed] witness testimony."  [Dkt. 79, Pl. Mem. In Response to OTSC at 8.]  Plaintiff further asserts "Plaintiff believes that on 4-5 times a week, G.N.H.T.D. management targeted plaintiff and other African Americans for harassement [sic] by manually editing drivers [sic] to add to african [sic] american [sic] employees [sic] work loads and lighten them for caucasion [sic] counterparts.  After there [sic] computer system has already generated the drivers manifest.  This procedure was witnessed by plaintiff and other drivers on numerous occasions."  [Dkt. 79, Pl. Mem. In Response to OTSC

**20**

at 9.] Not only is this claim not properly or timely asserted, it is unavailing and a motion to amend would be denied for futility.  *Cf. Zahra*, 48 F.3d at 685 ("Undue delay and futility of the amendment, among other factors, are reasons to deny leave [to amend].") (quotation omitted).

"Title VII's disparate impact provision prohibits employment practices that have the unintentional effect of discriminating based on race."  *Tinney v. City of New Haven*, No. 3:11-cv-1546, 2014 U.S. Dist. LEXIS 43887, at *17 (D. Conn. Mar. 31, 2014) (citing 42 U.S.C. § 2000e-2(k)(1)(A)(i)).  To establish a prima facie case of disparate impact, a plaintiff must show "(1) the occurrence of certain outwardly neutral practices, and (2) *a significantly adverse or disproportionate impact on persons of a particular type* produced by the defendant's facially neutral acts or practices."  *Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 574-75 (2d Cir. 2003) (quotation and citation omitted).

As defendant notes in their brief in response to the court's April 16 order to show cause, plaintiff's claim for disparate impact is an entirely new claim not raised in his complaint, and apparently not administratively exhausted. [Dkt. 81 at 5.]  In the interest of efficiency, the court need not reach the question of whether plaintiff's disparate impact claim is barred for failure to raise it earlier, as the court finds plaintiff's allegations supporting his disparate impact claim to be unpersuasive for several reasons.  First, they are wholly conclusory, and unsupported by citations to any facts whatsoever.  Second, a disparate impact claim requires plaintiff to identify a policy that is facially neutral.  *See, e.g., Attard v. City of New York*, 451 Fed. Appx. 21, 24 (2d Cir. 2011).  Even if the court were to

take plaintiff's conclusory allegations at face value, what plaintiff seeks to assert is intentional discrimination, not a facially neutral practice as required to sustain a disparate impact claim.  *Cf. Attard*, 451 Fed. Appx. At 24 (finding that because plaintiff alleges intentional discrimination rather than a facially neutral policy, she cannot establish a prima facie case of disparate impact).

Finally, as discussed above in Part IV(A)(1), scheduling at GNHTD was done in a "blind" fashion, without regard to the identities of the drivers or the passengers, and although it is apparently possible to modify the schedules after they have been generated by the computer, plaintiff has introduced no evidence whatsoever to show that there was a practice of modifying the plaintiffs' or other drivers' schedules after they were generated by the computer.  Even if the court were to assume, hypothetically, that GNHTD had such a practice, plaintiff has introduced no evidence whatsoever that such practice had a significantly adverse or disproportionate impact on persons of a particular type.

Plaintiff argues that "plaintiff believes that if he was permitted to call Roberta Golic [sic] and aquire [sic] witness testimony from plaintiffs [sic] witness list Plaintiff can prove to a jury that this lawful or unlawful labor practice was disparate, adverse and Discrimanatory [sic]."  [Dkt. 79, Pl. Mem. In Response to OTSC at 13.]  Roberta Golick is or was an arbitrator for the American Arbitration Association who issued the July 2, 2010 decision in the arbitration arising from the January 2010 termination.  [Compl., Ex. 2.]  Ms. Golick's opinion reinstated plaintiff to work at GNHTD, but declined to grant plaintiff back pay for the time he was out of work.  [Compl., Ex. 2 at 11.]  Defendant has filed a motion in limine to

prevent plaintiff from calling Roberta Golick at trial.  Although the court declines to decide on the motion in limine at this time, the court agrees that it would likely be improper for plaintiff to call Ms. Golick as a witness at trial, as it would violate the "well-settled law that testimony revealing the deliberative thought processes of judges, juries or arbitrators is inadmissible."  *Rubens v. Mason*, 387 F.3d 183, 191 (2d Cir. 2004) (citations omitted).

In addition, Ms. Golick may not be a proper witness because her testimony may mislead the jury. The plaintiff has not disclosed what the testimony would entail, the legal standard she applied, the facts introduced before her, why he could not offer at trial the evidence offered at the hearing before her, why he has not offered Roberta Golick's affidavit in opposition to the summary judgment briefing or summarized her expected testimony in the Joint Trial Memorandum or any of his other submissions.

Even if the court were, hypothetically, to allow plaintiff to call Ms. Golick as a trial witness, he has not provided enough factual information about her expected testimony to allow this claim to survive summary judgment.

Because plaintiff has failed to identify a facially neutral policy, and has not offered any evidence that there was a disparate impact, plaintiff fails to establish a prima facie case of disparate impact and the court enters summary judgment on plaintiff's disparate impact claim in defendant's favor.

## CONCLUSION

The court recognizes that plaintiff's tenure at the Greater New Haven Transit District was contentious, and that plaintiff challenged successfully many

of the defendant's disciplinary actions, including the January 2010 termination and the February 2011 suspension.  However, these facts alone do not constitute evidence of discriminatory actions and/or intentions.  For the above-mentioned reasons, the court grants summary judgment in favor of defendant on all of plaintiff's actual and intimated Title VII claims.  As the court has previously granted summary judgment in favor of defendant on all of plaintiff's other claims, the case is dismissed and the Clerk is directed to close this file.

IT IS SO ORDERED.


_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: July 2, 2014